# UNITED STATES DISTRICT COURT

**EASTERN DISTRICT OF WISCONSIN**

U.S DISTRICT COURT
EASTERN DISTRICT-WI
GREEN BAY DIV.

UNITED STATES OF AMERICA

'09 NOV 17 A9:59

V.

CRIMINAL COMPLAINT FILED
　　　　　　　　　　　CLERK

NORMAN A. GALLARDO-SANTOS
(d.o.b. 0██7/1984 )

CASE NUMBER: 09-M- 655

I, Bernard Bolf, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. That beginning by at least August, 2008 and continuing until November 12, 2009, in the State and Eastern District of Wisconsin, and other areas, **Norman A. Gallardo-Santos** the defendant herein, did knowingly conspire to deliver and possess with the intent to deliver cocaine, a Schedule II controlled substance, and marijuana, a Schedule 1 controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846.

I further state that I am a Special Agent with the Drug Enforcement Administration, and this complaint is based on the following facts:

Please see the attached affidavit.

Continued on the attached sheet and made a part hereof:   X Yes   ___ No

_____
Signature of Complainant
BERNARD D. BOLF

Sworn to before me and subscribed in my presence,

11/16/09
Date

at Green Bay, Wisconsin
City and State

The Honorable James R. Sickel
United States Magistrate Judge
**Name & Title of Judicial Officer**

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT & ARREST WARRANT

Special Agent (SA) Bernard D. Bolf, being first duly sworn, states that:

Background

1. I am currently an SA with the Drug Enforcement Administration (DEA), having been so employed for 19 years. As part of my duties, I investigate violations of state and federal drug trafficking laws, including distribution of cocaine and marijuana and the conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. Sections 841(a)(1) and 846. I have been involved in approximately 500 drug investigations and have participated in training courses including drug testing, drug interdiction, and state and federal narcotics officer training. Through my training and experience, I am familiar with the ways and means of narcotics trafficking.

Basis for Information in Affidavit

2. The information contained in this affidavit is based upon my personal knowledge and investigation, and information supplied to me by other law enforcement officers from DEA, Brown County Drug Task Force (BCDTF), Wisconsin Division of Criminal Investigation (DCI), as well as Lake Winnebago MEG (LWAM) whom I believe to be truthful and reliable. Based on my investigation as described below, which occurred at locations in the Eastern District of Wisconsin, and the information supplied to me by other law enforcement personnel, I have probable cause to believe the following regarding Norman A. Gallardo-Santos.

Facts Establishing Probable Cause

3. On August 28, 2009, BCDTF agents and DEA agents utilizing a Confidential Informant (hereby referred to as CI1) purchased approximately two ounces of cocaine (56.35

grams of cocaine) from Hipolito Salamanca-Catalan for $1,600 BCDTF pre-recorded funds at the residence located at 447 School Street, Wrightstown, Wisconsin. CI1, under the direction of BCDTF agents, made prior arrangements with Salamanca-Catalan for the purchase of the cocaine. CI1 had also informed the BCDTF agents that CI1 had dealt with Salamanca-Catalan in the recent past for multiple pounds of marijuana that Salamanca-Catalan would sell on consignment or "front" to CI1. CI1 had made the prior arrangements with Salamanca-Catalan by contacting Salamanca-Catalan on his cellular telephone of 920-362-7800. Following the transaction, agents followed Salamanca-Catalan to his residence located in Brillion, Wisconsin. Agents searched CI1 and his vehicle for drugs, weapons, and excessive money both before and after his meeting with Salamanca-Catalan with negative results.

4. On September 08, 2009, BCDTF, DCI, LWAM, and DEA agents, utilizing CI1 and another Confidential Informant (hereby referred to as CI2) purchased approximately two ounces of cocaine (57.82 grams of cocaine) for 1,600 DEA pre-recorded funds from Hipolito Salamanca-Catalan at his residence in Brillion, Wisconsin. The cocaine was delivered to CI1, CI2, and Salamanca-Catalan by an unknown Hispanic male who was identified by surveillance agents as living in Kaukauna, Wisconsin. During their meeting, Salamanca-Catalan asked CI1 and CI2 when they would pay Salamanca-Catalan for their previous drug debt of approximately $3,400. Prior to and after the meeting with Salamanca-Catalan, agents searched CI1, CI2, and their vehicle for drugs, weapons, and excessive money with negative results.

5. On September 11, 2009, CI1 and CI2 met with Norman A. Gallardo-Santos a.k.a. Velsenca in Kaukauna, WI concerning the above described drug debt and future drug business. Based on discussions CI2 had with Salamanca-Catalan, agents determined that Gallardo-Santos was the source for the cocaine and marijuana sold by Salamanca-Catalan. That day, surveillance

2

agents observed Gallardo-Santos meet with CI1 and CI2 at a restaurant in Kaukauna. Gallardo-Santos informed CI1 and CI2 that he should be paid for the approximately $3,400 CI1 owed Salamanca-Catalan for a previous drug deal. Gallardo-Santos also agreed to sell cocaine and marijuana directly to CI1 and CI2. Gallardo-Santos further agreed to give CI1 and CI2 approximately three days to pay back the $3,400 marijuana debt.

6. On September 16, 2009, agents arranged a controlled meeting between CI1, CI2, and Gallardo Santos for the purpose of CI1 and CI2 paying off the $3,400 drug debt using prerecorded funds. After CI2 made a recorded telephone call to Gallardo-Santos, Gallardo-Santos agreed to meet with CI1 and CI2 in Green Bay, WI. At approximately 1:41 p.m. that day, surveillance agents observed Gallardo-Santos arrive in a 2001 silver BMW SUV, Wisconsin license 843PPJ, registered to Maria Gaudalupe Zepeda from Cecil, Wisconsin. Surveillance agents observed CI2 enter the vehicle and later exit. CI2 later advised law enforcement that he provided Gallardo-Santos with the $3,400 prerecorded funds. After meeting with CI2, Gallardo-Santos was later stopped by an Outagamie County Sheriff's Deputy and identified as the driver of the vehicle also containing Pablo M. Javier Contreres, and Leonardo Valdovinos-Zepeda. Prior to and after the meeting with Gallardo-Santos, agents searched CI1, CI2, and their vehicle for drugs, weapons, and excessive money with negative results.

7. On September 21, 2009, and while working with law enforcement, CI2 made recorded telephone calls to Gallardo-Santos in reference to CI1 and CI2 purchasing two ounces of cocaine. During the telephone calls, Gallardo-Santos informed CI2 that Gallardo-Santos could not deliver the cocaine because Gallardo-Santos was out of town. Gallardo-Santos told CI2 that Gallardo-Santos had a friend who could meet with CI1 and CI2.

3

8. That same day, agents provided CI2 with $1,400 prerecorded funds and a digital audio/video recorder. The agents also searched CI1, CI2, and their vehicle for drugs, weapons, and excessive money with negative results. At approximately 6:43 p.m., surveillance agents observed a 1997 white Pontiac Grand Prix automobile, registered to Baldamar Valdovinos Zepeda, arrive at the meet location. The individual in the vehicle made contact with CI2 and identified himself as "Angel." CI2 later advised law enforcement that "Angel" provided CI2 with approximately 2 ½ ounces of cocaine (actual weight 67.20 grams). Agents subsequently met with CI1 and CI2 and obtained the cocaine. Agents also searched CI1 ad CI2 for drugs, weapons, and excessive money with negative results.

9. On October 28, 2009, agents met with CI2 and another BCDTF Confidential Informant (hereinafter CI3) in anticipation of CI2 arranging a cocaine deal with Gallardo-Santos. CI2 made recorded telephone calls to Gallardo-Santos and arranged for CI2 and CI3 to meet with Gallardo-Santos in the area of the Fox River Mall, Appleton, WI. CI2 was provided with $700 prerecorded funds and a digital audio/video recorder. Agents also searched CI2, CI3, and their vehicle for drugs, weapons, and excessive money with negative results. Surveillance agents observed Gallardo-Santos arrive at the mall and meet with CI2 in a bathroom at the mall. CI2 later advised that Gallardo-Santos provided CI2 with three ounces of cocaine and a sample of marijuana. CI2 paid Gallardo-Santos $700 prerecorded funds for one ounce of cocaine and received the remainder of the cocaine on consignment. Gallardo-Santos provided the marijuana sample to CI2 in anticipation of CI2 purchasing marijuana from Gallardo-Santos. In prior conversations, Gallardo-Santos advised CI2 that Gallardo-Santos obtained large quantities of marijuana from Washington and would sell the marijuana for $3,000 a pound. CI2 later turned

4

over the cocaine and marijuana to law enforcement who also searched CI2, CI3, and their vehicle for drugs, weapons, and excessive money with negative results.

10. On November 12, 2009, agents met with CI2 and CI3 for purposes of CI2 paying Gallardo-Santos for the previous drug debt. CI2 spoke with Gallardo-Santos and arranged to meet him again at the Fox River Mall in Appleton. Surveillance agents subsequently observed a 2005 yellow Chevrolet truck, registered to Norman A. Gallardo-Santos, leave the residence located at 1095 Stillmeadow Lane, Menasha, WI. Surveillance agents followed the 2005 yellow Chevrolet to the west parking lot of the Fox River Mall were four individuals exited the vehicle and were later located in the food court area of the mall.

11. Agents provided CI2 with $1,400 prerecorded funds and a digital audio/video recorder. After being searched with negative results, CI2 and CI3 then drove to the Fox River Mall. Surveillance agents observed Gallardo-Santos exit the mall and meet with CI2 and CI3 in the parking lot. CI2 later stated that he provided Gallardo-Santos with $1,400 prerecorded funds at the meeting. CI2 and Gallardo-Santos also discussed future cocaine and marijuana sales.

12. Surveillance agents observed Gallardo-Santos and three other individuals enter the Chevrolet truck and drive to a U.S. Bank in Appleton, WI. Surveillance agents observed an individual, later identified as Baldemar Valdovidos-Zepeda exit the vehicle and enter the bank. Several minutes later, that same individual exited the bank and entered the vehicle which was then followed to Gallardo-Santos's residence in Menasha, WI.

13. On November 12, 2009, surveillance agents watching the Gallardo-Santos residence observed a white Pontiac Grand Prix leave the residence. This vehicle was previously involved in the 2 ½ ounce cocaine delivery on September 21, 2009. Law enforcement stopped the vehicle and identified the driver of the vehicle as Baldemar Valdovinos-Zepeda. Agents

5

subsequently found $500 of prerecorded funds on the person of Baldemar Valdovinos. That money was utilized on November 12, 2009 to pay Gallardo-Santos for cocaine.

14. On November 12, 2009, Wisconsin DCI SA Al Hunsader obtained a document related search warrant in Outagamie County Circuit Court, Appleton, Wisconsin for the Gallardo-Santos residence located at 1095 Stillmeadow Lane, Menasha, Wisconsin. At approximately 6:15 p.m., agents executed the search warrant at the residence and made contact with Gallardo-Santos, Pablo Comtrara-Mata, and Maria Gaudalupe Zepeda. A fourth subject, a male Hispanic, forced open a window and was able to escape from a bathroom window. While executing the warrant, agents observed approximately 4.1 grams of marijuana in the basement. Wisconsin DCI SA Hunsader obtained a second search warrant, specifically for drugs, and this warrant was then executed. Subsequently the officers seized approximately 118.2 pounds of marijuana from various locations in the residence, 10.4 grams of cocaine, a loaded .38 caliber semi-automatic handgun with additional ammunition, $40,000 from the basement, and $27,990 from the master bedroom used by Gallardo-Santos and Zepeda.

15. Your affiant conducted a Miranda post-arrest interview of Gallardo-Santos at the Appleton Police Department on November 12, 2009. Gallardo-Santos stated that he worked for the individual who fled from the apartment. Gallardo-Santos only knew him as "Gordo". Gallardo-Santos stated that approximately two months ago Gordo gave him $5,000 to get an apartment for Gallardo-Santos and Gordo. Gallardo-Santos stated he would also pick-up drug money for Gordo but did not deliver drugs for Gordo. Gallardo-Santos stated that all of the marijuana in the residence belonged to Gordo. Gallardo-Santos would not provide any other information related to Gordo.

16. All of the cocaine purchased in the investigation involving Hipolito Salamanca-Catalan, "Angel", and Gallardo-Santos was tested for the presence of cocaine utilizing a Modified Scott Reagent test and all of the cocaine tested positive for cocaine.

17. Based upon the foregoing information, I believe there is probable cause to believe that Gallardo-Santos conspired with others to deliver cocaine and marijuana contrary to 21 U.S.C. sections 841 and 846.

_____
Affiant
SA Bernard Bolf
Drug Enforcement Administration

Subscribed and sworn before me
this __16__ day of __Nov__, 2009

_____

7